Argued 13 November; decided 16 December, 1901.

## HAINES *v.* CADWELL.

[66 Pac. 910.]

EVIDENCE—CONCLUSIVENESS OF MEMORANDUM.

1.   The memorandum *contemplated by Section 692 of Hill's Ann. Laws*, is one containing the terms of the agreement between the parties, and one that refers to or includes only a part of a transaction is not conclusive to the exclusion of oral testimony.

BANKS—ADVANCES ON SECURITY NOTE.

2.   Defendants executed a note to plaintiff, a banker, to secure a present payment and future advances if he should choose to make any. After he had refused to make further advances, defendants deposited certain drafts, which were credited to their account. When one of the drafts was paid, a clerk credited the amount to them, not knowing that it was credited before.   On discovering the mistake, plaintiff charged the amount back to defendants, but they checked against the amount so credited, and plaintiff honored the checks. *Held,* in an action on such note, that the amount so paid on such checks should be considered as advanced under such agreement.

WITNESS REFRESHING MEMORY BY MEMORANDUM.

3.   In an action by a banker to recover advances made to defendants, a clerk who kept the bank books, and knew them to be correct, may refresh his memory, while testifying, by consulting memoranda copied from the books, and carefully compared by him, if after so using it, he is enabled to testify from memory of the original transactions.

HARMLESS ERROR IN ADMITTING EVIDENCE.

4.   Error committed in admitting evidence is rendered harmless by subsequently receiving other unobjectionable evidence covering the same point.

TRIAL—PLEADINGS AND PROOFS.

5.   No error is committed in excluding testimony offered in support of issues not made by the pleadings ; nor is it error to exclude part of such testimony after having improperly admitted some.

INSTRUCTION—ESTOPPEL TO OBJECT.

6.   Where defendant has introduced evidence in support of an attempted counterclaim, which is not at issue because of defective pleading, and plaintiff has given evidence in rebuttal thereof, defendants cannot complain of a charge as to the effect of such evidence if found true.

From Washington:   THOS. A. McBRIDE, Judge.

Action by E. W. Haines against E. P. Cadwell and Laura M. Cadwell.   From a judgment for plaintiff, defendants appeal.                                        AFFIRMED.

For appellants there was a brief over the name of *H. T. Bagley,* with an oral argument by *Mr. H. C. Watson.*

For respondent there was a brief and an oral argument by *Mr. Samuel B. Huston.*

MR. JUSTICE WOLVERTON delivered the opinion.

It is alleged in the complaint that plaintiff is engaged in the business of banking at Forest Grove, Oregon; that on May 8, 1899, the defendant E. P. Cadwell had overdrawn his account at the bank to the amount of $444.57, and desired further credit; that, in order to pay this balance, and to secure the payment of such drafts as he might draw upon the bank, and such advances as it would be convenient for plaintiff to make, the defendants executed and delivered to plaintiff their certain promissory note for $2,000, payable in ninety days, with interest at the rate of eight per cent. per annum; that at the date of the execution of said note the plaintiff, at the request of the defendants, credited Cadwell's account with the sum of $775; that subsequently Cadwell drew checks upon the bank, which were honored and paid, aggregating $170.95 more than he had deposited to his account, and judgment is demanded in that sum. The complaint was amended at the trial by leave of the court to make it show that the plaintiff advanced and paid other moneys, aside from the checks alluded to, on Cadwell's account, and for the use and benefit of the defendants. The defendant's answering separately, deny that the note was made or executed in pursuance of any other agreement than that set forth and contained in a certain writing dated ''Forest Grove, Oregon, May 8, 1899,'' or that at any time since they, or either of them, received any money whatever on said note, other than the said $775 placed to the credit of E. P. Cadwell at the time of its execution, and allege, in substance, that he subsequently requested an advance under the terms of said agreement of May 8, which was refused, and that on July 29, 1899, he paid plaintiff the full amount due upon said note, and demanded its surrender.

1.   At the trial, and while plaintiff was under examination in his own behalf, he was permitted to state the understanding and agreement under which the note was executed, over the objection that it was not the best evidence, the agreement being in writing; and the ruling of the court in this respect is assigned as error.   The writing was subsequently introduced by the defendants, and is as follows:

"Forest Grove, Oregon, May 9, 1899.
"This may certify that of this note for $2,000 dated May 8, 1899, signed by E. P. Cadwell and Laura M. Cadwell, but $775 has been advanced, leaving $1,225 which has not been paid, and which may be advanced or not, at the option of said E. W. Haines. If said note should be paid before any further advances are made, $775 and interest would pay and satisfy the same in full.

"[Signed]        E. W. HAINES."

This document is but a memorandum showing the state of the account at the time, and does not purport to contain the terms of the agreement between the parties as to the conditions under which the note was given; and it was not error, therefore, to admit the oral statement thereof.

2.   It appears from the testimony that some six or seven weeks before June 6, the defendant E. P. Cadwell, having money with the Hilo Mercantile Company of Hilo, Hawaiian Islands, drew on the company in favor of the plaintiff for $250, which amount was placed to his credit in the bank, and the draft sent on for collection.   On June 6, having received returns, one of the bank clerks, not being advised of the credit theretofore given Cadwell, again credited him with the amount with other collections made at the same time.   About that time, and before the mistake was discovered, Cadwell asked for a statement of his account with the bank, which, being rendered, showed a balance in his favor of $248.64, whereupon he drew three drafts upon the bank covering this balance, which were all paid,—one on June 15, and another on June 19, 1899.   On June 12, when the mistake was discovered, the plaintiff at once debited Cadwell's account with $250, and notified him by telegram, which was delivered on the thirteenth.   On May 23 of

that year plaintiff declined to make any further advances to
the defendant, and on July 28 the latter paid him $778.83,
which was received in payment of the $775, and interest thereon
to date, and was to be credited on the note of $2,000. Subse-
quently other sums were received from the defendant Cadwell,
aggregating $90.46. Now, in this state of the record, it is con-
tended that, as the plaintiff had, through his own mistake, ex-
tended the defendant additional credit, who was thereby in-
duced to overdraw his account, plaintiff could have no action
upon the note, because it was not such an advance of money as
the note was made to secure. In elucidation, one of the de-
fendant's counsel says in his brief: "How could it be re-
garded as such, when defendant had made a request for a
further advance, which was refused by the plaintiff, and the
money which was advanced was advanced by plaintiff and re-
ceived by the defendant by mutual mistake? * * * Plaintiff
has a remedy, but we submit that it was not by an action on the
note, which provides for the payment of attorney's fees in ad-
dition to other charges." The objection is refined and highly
technical, and, we think, without merit. The plaintiff alleges
that the note was given to secure further advances in such
amounts and at such times as it might be convenient for him to
make, and the testimony tends to the establishment of the alle-
gation. Now, although the plaintiff had refused at one time
subsequent to entering into the agreement to extend further
credit on account of the note, it appears that he paid two of the
drafts, aggregating $148.64, drawn upon the rendition of the
erroneous statement after the discovery of the mistake. Ex-
tension of credit or the placing of the $250 to the credit of
Cadwell's account by mistake of plaintiff did not obligate him
to pay the drafts, and he might have refused to honor them; so
that it would seem that plaintiff really made the advancements,
so far as these latter items are concerned, voluntarily and in-
tentionally, notwithstanding Cadwell's account had been erro-
neously credited and an erroneous statement rendered. This
disposes of any mutuality between the parties as to the alleged
mistake, as the greater portion of the recent advances was

made by plaintiff with full knowledge of the true conditions. But, however this may be, the fact remains that defendant had an account with the bank at the time, and the note was given to secure further advances thereon, as well as the deficit that had accumulated. The account continued running, and the liability was incurred in the course thereof. The fact that an item of credit was given by mistake of plaintiff, and defendant had availed himself of the opportunity, and had drawn against the bank to cover the amount thereof, renders it none the less an advance or extension of credit under the terms of the agreement. The account had never been closed, nor had the note been surrendered, so that the obligation to answer for the advance continued, and the action was properly instituted. There were some instructions asked and refused, which present the same question; hence it is not necessary to notice them further.

3. In the course of the trial, while F. T. Kane was being examined as a witness for the plaintiff, he was permitted to testify from a memorandum of the bank account with defendant Cadwell, and error is predicated thereon. The record shows that the witness was the cashier of the bank; that its books were kept under his direction and supervision, and he knew them to be correct; that the memorandum used was copied from the books, and by him carefully compared, so that he knew the same to be a true transcript therefrom. This was sufficient to entitle him to refresh his memory, if, after so using it, he was enabled to testify from memory of the original transactions: Bradner, Ev. p. 468.

4. But, if this were not so, the books themselves were subsequently offered and admitted in evidence, and this was corrective of any error that may have been made as to the use of the memorandum relative to their contents.

5. E. P. Cadwell attempted to set up a counterclaim in substance as follows: That on about August 15, 1898, defendant sent plaintiff $4,000, to be used and invested in accordance with a letter of instructions dated August 18, 1898; that on September 8 plaintiff acknowledged the receipt of the money,

and agreed to use and invest the same in pursuance of the instructions, but, failing to comply therewith, used and invested the money for his own benefit; and it is sought to charge him with interest for the time he had the money in his bank. While Cadwell was a witness in his own behalf, he identified his letter of instructions accompanying the draft for $4,000, which was thereupon introduced in evidence. It directed the plaintiff to put the money out at interest for six and nine months at the best rates possible, if he could find good, safe loans; but that, if he was unable to secure the loans, then to issue a certificate of deposit at the usual rates. The latter further directed plaintiff to advance Prof. J. W. Marsh such amounts as he should ask, and take his receipts therefor. It was further shown that plaintiff came into possession of the money September 15; that a portion of it had been paid out to Marsh, which, with payments on Cadwell's drafts on him, reduced the amount, March 8, to $2,300. Thereupon Cadwell offered to show by plaintiff's books that from September, 1898, to March, 1899, inclusive, plaintiff had all his deposits in the bank loaned out, with which was included the $4,000 that defendant had sent him; but was not permitted to do so, and error is assigned.

There is one reason lying at the very base of the attempted counterclaim sufficient to justify the exclusion of the testimony offered, and that is the answer does not state facts upon which the counterclaim can be supported. It alleges that defendant forwarded to plaintiff $4,000 to be invested in accordance with a letter of instructions, but the manner of the instructions is nowhere set out, so that there are no facts alleged constituting any agreement as to loaning the funds on the part of the plaintiff, and there can be no breach without prior agreement. So that the evidence was not admissible under the pleadings, and was therefore properly excluded. True, the court let in the letter of instructions, but it amounted to a mere matter of grace and favor, as it was not legitimately admissible. In rebuttal, plaintiff was permitted to show that he had made all reasonable efforts to loan the money, but was

unable to do so, and some further matters in excuse for not complying with the instructions; and it is insisted that the court erred in this particular, as no justification was pleaded. The fact remains that the issue need not have been submitted touching the $4,000 transaction, because no proper counter-claim regarding it had been pleaded; but, as defendant had introduced some evidence of an undertaking on the part of the plaintiff, it was not inappropriate to permit him to show why he could not comply with the conditions. The undertaking, if one was entered into, was that plaintiff would loan the money if he could, and the evidence admitted was to the effect that he was unable to put it out after repeated efforts. The defendant, having brought the controversy into the record, cannot consistently complain of the opportunity afforded the plaintiff to disprove his contention. There was an instruction asked by the defendant with reference to the same matter, which was properly refused for a like reason, and for the further reason that it did not aptly state the issues pertaining thereto.

6. The court instructed the jury, however, that, if it was impracticable to send the defendant a certificate of deposit for the reasons given, it would be the duty of the plaintiff to keep the money in the bank, subject to the order of the defendant; and this is complained of as being without the issues. But the defendant made the instruction necessary by introducing his letter directing the issue of the certificate if plaintiff was unable to put the money out at interest, and the lack of knowledge of defendant's address afforded ample excuse for not sending the certificate. It was, therefore, within the issues thus brought into the trial of the cause by the defendant, and he is not in a position to urge the objection.

There are some other questions of minor importance not especially urged, all of which have been considered, and, finding no error in the record, the judgment of the court below will be affirmed.                    AFFIRMED.